720 So.2d 349 (1998)
Gregory P. DEAN
v.
K-MART CORPORATION.
No. 97-CA-2850.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 1998.
*351 Joseph G. Albe, Robert A. Lenter, Metairie, for Plaintiff/Appellee.
Nicholas J. Lorusso, Ungarino & Eckert, Metairie, for Defendant/Appellant.
Before ARMSTRONG, JONES and LANDRIEU, JJ.
ARMSTRONG, Judge.
This is a workers' compensation death benefits case. Following a hearing before a Hearing Officer of the Office of Workers' Compensation, the claimants, who are the decedent's two minor children, were awarded death benefits at the minimum rate as well as penalties and attorney's fees. The employer appeals the judgment and argues that the claimants failed to prove that their father's death was caused by his much earlier work-related accident and that they failed to prove that they were at all dependent upon their father at the time of his death. The employer also appeals the award of penalties and attorney's fees. We affirm the award of death benefits, finding that the Hearing Officer was not clearly wrong/manifestly erroneous as to the causation or dependency issues, but reverse the award of penalties and attorney's fees because the employer had reasonable grounds to contest the claimants' entitlement to death benefits.
Gregory Paul Dean was an employee of K-Mart Corporation. Mr. Dean was injured in a work-related accident on February 15, 1984. His two minor children, the claimants, resided with him and were dependent upon him at the time of his accident. Mr. Dean began to receive workers' compensation payments. Some time later, Mr. Dean and his wife divorced and the children lived with their mother. In connection with that divorce, a child support order was entered requiring Mr. Dean to make child support payments for the benefit of the two children. Also during this time period, Mr. Dean received medical care including prescription pain medication and muscle relaxants as treatment for his work-related injury. On September 29, 1994, Mr. Dean died. The autopsy report stated that Mr. Dean died from respiratory failure due to the combination of opiates, benzodiaprezines and propoxyphene which were prescription medications Mr. Dean was taking at that time.
On appeal, we review the Hearing Officer's findings of fact as to causation and dependency using the manifest error/clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/98), 630 So.2d 706, 710. Thus, we may not reverse the Hearing Officer's findings of fact so long as they are reasonable in light of the record regardless of whether we would have made the same findings if we addressed the factual issues as an original matter. E.g., Ambrose v. New Orleans Police Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220-21.

*352 Causation

The claimants have the initial burden of proof as to causation. E.g., Quinones v. United States Fidelity and Guaranty Co., 93-1648 (La.1/14/94), 630 So.2d 1303, 1306-1307. The claimants must establish causation by a reasonable preponderance of the evidence. Id. See also H. Alston Johnston, III, 13 La Civil Law Treatise: Workers' Compensation Law and Practice § 252 (3rd ed.1994). The trial court's (or, in this case, Hearing Officer's) decision as to causation is one of fact and will not be disturbed upon appeal unless it is clearly wrong/manifestly erroneous. Quinones, 630 So.2d at 1307; Workers' Compensation Law and Practice, § 257. In the present case, the Hearing Officer, in her written reasons for judgment, held in favor of the claimants as to the causation issue and specifically held: "Decedent's death was a direct result of his dependency on pain medication for his pain resulting from his back injury."
At trial, the claimants relied upon two sources of evidence as to causation. First, they relied upon the St. Tammany Parish Coroner's autopsy report which, as mentioned above, gave the cause of death as respiratory failure due to the combination of prescription medications which Mr. Dean was taking as a result of his work-related accident.
Second, the claimants relied upon the expert testimony of a pharmacist, Max Chotto. Mr. Chotto has a Doctor of Pharmacy degree, is licensed as a pharmacist in Louisiana and has a number of years of experience as a practicing pharmacist. He regularly advises physicians as to drug interactions. Mr. Chotto was tendered to and accepted by the Hearing Officer as an expert in pharmacy in general and "drug interaction" in particular.
K-Mart's brief on appeal briefly asserts that Mr. Chotto is unqualified to make a determination regarding the cause of Mr. Dean's death. Initially, we note that, while K-Mart cross-examined Mr. Chotto as to his qualifications, K-Mart objected at trial neither to Mr. Chotto's being accepted as an expert witness as tendered nor to any of Mr. Chotto's testimony. In any case, Mr. Chotto testified in detail as to his pharmacy training and experience and, at least insofar as he testified to drug interaction as the cause of Mr. Dean's death, Mr. Chotto was fully qualified so as to make his expert testimony admissible.[1] La.Code Evid. art. 701.
Mr. Chotto testified that the three medications found in Mr. Dean's bloodstream, per the autopsy report, correlated to the three prescription medications Mr. Dean was taking as a result of his work-related injury. Mr. Chotto agreed with the autopsy report that the combination of those three medications caused respiratory depression which resulted in Mr. Dean's death. Mr. Chotto testified that Mr. Dean, who weighed over three hundred pounds, would be particularly susceptible to this respiratory depression because of his obesity. Mr. Chotto also testified that two of the prescription medications Mr. Dean was taking were physically and mentally addictive, that physicians do prescribe such medications to persons with chronic pain because the addiction is the lesser of two evils and that the relief of severe long term pain with such medications is "a delicate balance of finding the proper managing the pain and not abusing the substance." Mr. Chotto saw nothing in the medical reports or the autopsy report of Mr. Dean to indicate that Mr. Dean's death was an intentional act.
K-Mart argues that Mr. Dean's death resulted from his abuse of prescription medication, by Mr. Dean taking more than the prescribed amounts, rather than from an interaction of those prescription medications taken in the prescribed amounts. K-Mart relies upon three items of circumstantial evidence for this hypothesis. First, K-Mart points to the St. Tammany Parish Coroner's report that Mr. Dean's girlfriend reported that Mr. Dean "doubled-up" on his medication. Second, K-Mart points to a medical malpractice petition which Mr. Dean filed against a medical doctor and a chiropractor *353 for improperly prescribing medications for him and causing him to become addicted to those medications. Third, K-Mart points to the testimony of Mr. Dean's ex-wife that Mr. Dean took "too much" medication.
Each of these three items of evidence relied upon by K-Mart has aspects which limit its persuasiveness and/or relevance to the issue of causation. The statement by Mr. Dean's girlfriend that he "doubled up" his medication, recounted in the coroner's report, is hearsay and, even if admitted without objection, is less than compelling because of the lack of live testimony including elaboration and cross-examination. Second, as to the medical malpractice petition, the fact that Mr. Dean's medical problems may have been aggravated by medical malpractice is not relevant because: "an employer is liable for workers' compensation due to improper medical treatment if these complications are causally related to the on-the-job accident." Miller v. United States Fidelity & Guaranty Co., 478 So.2d 200, 203 (La.App. 3rd Cir. 1985). Third, as to the testimony by Mr. Dean's ex-wife that "he took too much," this referred to a time period before they split up which was at least three years before Mr. Dean's death. Lastly, we note that K-Mart presented no medical, pharmacy or other expert testimony to rebut the testimony of claimants' expert, Mr. Chotto, and that the coroner's report did not include reports of the concentrations of medications in Mr. Dean's bloodstream so that the amounts he took cannot be inferred from that source. The Hearing Officer could reasonably have concluded that K-Mart's factual theory of overuse of medication was too speculative to credit.
We also have a more fundamental difficulty in accepting wholly K-Mart's legal assumption that, if Mr. Dean died because he took more than the prescribed amount of medication, as opposed to dying from a drug interaction after taking only the prescribed amount of medication, then that overuse of medication would, ipso facto, break the chain of causation between Mr. Dean's work-related accident and his subsequent death. We can see that there might be cases in which the abuse of prescription medication, particularly for blatantly recreational use, went so far that it could not be considered to have been caused by the work-related injury that led to the prescription of the medication. But, we also can see that, in the context of long-term use of addictive prescription medications for chronic pain, some use of the medications in excess of the prescribed amounts is fairly considered to have been caused by the work-related injury which led to the prescription of the medication. Mr. Chotto testified that it is not uncommon for persons taking medication for chronic pain to take more than the prescribed amount and that it is not uncommon for their physicians to verbally tell them to take more than the amount stated in the prescription. Mr. Chotto testified that, based upon his experience and Mr. Dean's medical records, Mr. Dean would have undergone a daily struggle in the management of his pain and the use of his medication. The Hearing Officer reasonably could have found that Mr. Dean's death, even if it resulted from the use of medications in excess of the prescribed amounts, was caused by his work-related injury. Menendez v. Continental Ins. Co., 515 So.2d 525 (La.App. 1st Cir.1987), writ denied, 517 So.2d 808 (La.1988) (hypersensitive allergic reaction caused by taking quadruple recommended dosage of medication).

Dependency
K-Mart argues that the claimants are not entitled to receive death benefits because they were not dependent (even partially) upon Mr. Dean at the time of his death. Because the claimants were not living with Mr. Dean at the time of his death, they do not enjoy the conclusive presumption of dependency provided by La.R.S. 23:1251. Renard v. Security Protection Services, 96-2394 (La.App. 4 Cir. 3/19/97), 692 So.2d 9, 10. Instead, they must prove that they were dependents of Mr. Dean at the time of his death. Id. This issue of dependency is "determined in accordance with the facts as they may be at the time of the accident and death." La.R.S. 23:1252. Such dependency "must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to the support of an alleged dependent by an employee, *354 shall not constitute proof of dependency as a fact." La.R.S. 23:1254.
"Dependency, of course, is a question of fact.... Thus, the Hearing Officer's findings should not be disturbed on appeal absent manifest error or clear wrongness, even where a conflict in the evidence exists." Hunt Plywood, Inc. v. Estate of Davis, 26,161, 26,162 (La.App. 2 Cir. 10/26/94), 645 So.2d 248, 251, writ denied, 94-2877 (La.1/27/95), 649 So.2d 388. In the present case, the Hearing Officer, in her reasons for judgment, made a specific factual finding that the claimants were dependent upon Mr. Dean at the time of his death. She based this upon Mr. Dean's making of court-ordered child support payments to the claimants' mother and upon his "considerable parental involvement" in the claimants' lives (i.e. the claimants lived with Mr. Dean on alternate weekends, etc.).
It is undisputed that the claimants' mother had obtained a child support order requiring Mr. Dean to make child support payments. It is also undisputed that Mr. Dean did not stay current as to those child support payments. At trial, claimants' mother produced photocopies of child support payment checks she had received from Mr. Dean. K-Mart's sole basis for arguing that the claimants were not dependent upon Mr. Dean at the time of his death is that the last of the child support checks produced at trial was dated about eighteen months prior to Mr. Dean's death. The claimants' mother could not testify positively that there were any later child support checks although she did say that she stopped photocopying the checks when she believed that Mr. Dean would catch up on his child support payments.
If there has been a court order for child support, but no child support payments have been made, then dependency has not been established. Haynes v. Loffland Brothers Co., 215 La. 280, 40 So.2d 243 (1949). By logical extension, it might be that child support payments, although commenced, might cease for such a long period of time that dependency also must be considered to have ceased even if the court order for child support remains in effect. Also, in a case of an eighteen month lapse of child support payments (i.e. the period of time involved in the present case), there might be circumstances which show that the cessation of child support payments is permanent, or at least indefinite, so that dependency must be considered as having ceased even if the court order for child support might remain in effect. We believe that the issue must be resolved in light of all the factual circumstances including, but not limited to, the length of time since the last child support payment. "Although Court ordered support alone does not suffice for a determination of dependency, sporadic or irregular payments under court order for support have been considered proof of dependency." Lathrop v. Hercules Transportation, 95 0936 (La.App. 1 Cir. 12/15/95), 666 So.2d 395, 397 (collecting cases) (dependency found where last child support payment made about seven months prior to employee's death). "Occasional support payments under court order ... have also sufficed as proof of dependency." H. Alston Johnson, III, 14 La. Civil Law Treatise: Workers' Compensation Law and Practice § 304 at 26 (3rd ed.1994). See also Fontenot v. Annelida Acres, Inc., 302 So.2d 690, 696 (La.App. 3rd Cir.1974) (dependency found where court order for child support obtained but only two child support payments made).
In the present case, there was a court order for child support payments and a pattern of irregular payments. The claimants' mother testified that Mr. Dean would fall behind on his payments, give her the explanation that K-Mart had ceased or reduced his workers' compensation payments, and would then catch up on his payments (although it is apparent that Mr. Dean never became fully current on the payments). Also, Mr. Dean remained involved with his children, the claimants, in that they lived with him on alternate weekends, he provided them with gifts of clothes and shoes and sometimes helped out financially with special needs of the children such as medical expenses. The Hearing Officer was impressed by this evidence of Mr. Dean's commitment to the claimants and we agree that it lends some support to claimants' contention that Mr. Dean had not ceased financial support of *355 the claimants despite the lengthy hiatus in child support payments. Considering these facts in light of the above-discussed legal authorities, we cannot say that the Hearing Officer was clearly wrong/manifestly erroneous in her finding of dependency.

Penalties and Attorney Fees
The Hearing Officer awarded statutory penalties under La.R.S. 23:1201(F) on the ground that the claim for death benefits was not "reasonably controverted" by K-Mart. The Hearing Officer awarded attorney's fees under La.R.S. 23:1201.2 on the ground that K-Mart's refusal to pay death benefits was "arbitrary, capricious or without probable cause." Generally speaking, the courts have not drawn a distinction between the "reasonably controverted" standard of La.R.S. 23:1201(F) and the "arbitrary, capricious or without probable cause" standard which is contained in La.R.S. 23:1201.2. See H. Alston Johnson, III, 14 La. Civil Law Treatise: Workers' Compensation Law and Practice § 389 at 403-405 (3rd ed.1994). The effect of either standard is that the employer may not be required to pay penalties or attorney's fees if it had a "reasonable basis" to object to the payment of benefits. Id. (citing Clark v. Atlantic Painting Co., 521 So.2d 505 (La.App. 4th Cir.1988) and other cases).
The fact that the Hearing Officer awarded benefits, and we have affirmed that award, does not mandate the award of penalties or attorney's fees.
It should be clear that the mere fact that the employer refuses to pay on the ground that he denies liability entirely, or denies that he owes as much as is demanded, is not enough to warrant the imposition of the penalty even though the facts and law developed at the trial show that he was in error in refusing. The refusal must have been without reasonable foundation in fact or law.
Workers' Compensation Law and Practice, supra at 405. See generally McGaughey v. New Orleans, 96-1331 (La.App. 4 Cir. 5/28/97), 695 So.2d 1109; Maiden v. Crossroads of Louisiana, 95-1985 (La.App. 4 Cir. 7/24/96), 678 So.2d 75; Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982).
In the present case, it simply cannot be said that K-Mart was without any reasonable basis for contesting the claim for benefits. Mr. Dean died about ten years after his work-related injury from somewhat indirect causes and under somewhat unclear circumstances. K-Mart had a reasonable foundation for its defense of lack of causation. Also, Mr. Dean apparently had not made any child support payments for the claimants' benefit for about eighteen months at the time of his death. Thus, K-Mart had a reasonable foundation for its defense of lack of dependency. Thus, this is not an appropriate case for an award of penalties or attorney's fees.
For the foregoing reasons we reversed the award of penalties and attorney's fees but otherwise affirm the judgment of the trial court.
REVERSED IN PART.
NOTES
[1] Following trial on the merits, K-Mart Corporation retained new counsel to represent its interests on appeal.